23-10365, The Hurry Family Revocable Trust v. Christopher Frankel And then one week before the trial, if I have these facts right, the defendant emails what he characterizes as, quote, his real witness list and an exhibit list, and he lists four witnesses, but he doesn't mention Fife at all. Why under these circumstances would it have been an abuse of discretion for the district court to keep Fife off? Sure. The first item that you had mentioned was the initial disclosure. And in the initial disclosures in response to the original complaint, Mr. Frankel indeed listed two witnesses because those were the only witnesses that he needed to defend. I understand. That's all he knew at the time. The first, then there was the interrogatory response where he listed Mr. Fife as somebody who he had been in contact with. But that doesn't make him a witness. That doesn't even say that he was planning to call him. That doesn't even put him on a potential or maybe list. Then in the pretrial statement where Alpine first identifies that it's perhaps seeking damages for bringing Mr. Fife's business to vision, Frankel lists him as a witness on the pretrial statement. That was in, I believe, 2020, early 2020. After that, then there was the discussion about which witnesses are you definitely going to call, and he gives a shorter list of the witnesses that he was definitely going to call. Mr. Fife at all times remained on the pretrial statement as a witness, as a maybe witness, a may call witness, depending on how the facts came out. But how is the district court to read the April 21st, 2021 email from your client describing his real witness list, presumably the ones he really is going to call because it's only one week before the trial, and it doesn't include Fife? That was the will call list that he definitely intended to call, and then that didn't remove any other witnesses from his may call list. And so I do think absolutely it was an abuse. I mean, wasn't that a mistake? Shouldn't Fife's name have been on that list, in which case this problem wouldn't have arisen? Fife's name, at that point... I'm talking about the real witness list, one week before trial that the defendant provides. Well, depending on how the evidence comes in at trial, depending on the theories that the plaintiff ends up pursuing at trial, Mr. Frankel had a right to call anyone off of his original witness list. Let me ask the question in a slightly different way. Was this subject of unjust enrichment a surprise to him by April of 21? I think that Alpine had identified that it was pursuing unjust enrichment, and I do think in the pretrial statement it did identify that unjust enrichment was an issue, yes. Thank you. So John Fife was at the very center of the case that Alpine put on at trial. He was a disinterested third-party witness, a mutual client of both Alpine and Vision. He was one of the only people who could testify about exactly what happened. We proffered his testimony that he routinely worked with Mr. Frankel at a prior position that Mr. Frankel had, that Mr. Fife regularly seeks out additional clearing firms to open accounts with, that Mr. Fife was the one who sought out and contacted Mr. Frankel to open the account at Vision, and that Fife has still maintained his accounts with Alpine, and that Mr. Frankel didn't disclose to Fife and his companies, didn't disclose to them any non-public information of Alpine. Alpine had made a case about Mr. Fife, and Mr. Frankel was deprived of a fair trial when he wasn't allowed to call him in defense. Then in the second ruling, the district court allowed Alpine to present the jury with a damage computation that it had never put in an initial or an amended disclosure. Mr. Fife had moved to exclude any damage computation at trial, and the district court granted that motion. But then minutes before closing argument, Alpine handed Mr. Frankel its damage computation for the very first time, and the district court allowed it, not based on Rule 37, or any exceptions like substantial justification or harmless, but because it was a demonstrative so the jury could follow the math. When Mr. Frankel testified, wasn't that the first time that Alpine had any numbers from which to compute unjust enrichment? It was not, because what Alpine eventually asked for at trial were numbers that came out in Mr. Frankel's deposition, related to the amounts that John Fife's companies had paid to the division. So Alpine's disclosure after the close of evidence presented Mr. Frankel from doing any analysis or any computation of that computation and the submission of any evidence to refute it. And so looking at these series of rulings, the district court allowed Alpine to proceed on an unplaid claim without filing an amended complaint, allowed Alpine to seek new undisclosed damage computation without amending its disclosures, but then it prevented Mr. Frankel from calling John Fife as a witness to defend against the new unplaid claim and new undisclosed damage computation. And that deprived him of a fair opportunity to defend. Turning to the cross appeal, the record clearly showed that Alpine never tried to move for an injunction at any point until 30 days after the judgment. And the district court listed a whole series of events that showed Alpine had notice of the claim. And certainly nothing stopped Alpine from moving for an injunction at any point earlier in time, and certainly not when the trial was delayed for a year. At any point, Alpine could have moved for that. After trial, the clerk put the exhibits on the docket, including those with the alleged trade secrets, and Alpine didn't even move to seal those exhibits. The district court also correctly found that it was bound by the jury's determination that Alpine had no damage at all, not even nominal damage. And I think one of the points that seems to be missed here in the cross appeal is that Alpine only proved that some of its clients started doing business with Vision. There was no proof at all that anyone stopped doing business with Alpine. Alpine put on zero evidence that it lost a single client or even any business. And several witnesses have testified that clients set up multiple accounts everywhere they can because a single broker-dealer cannot handle all of their trading activity. You're over your time, but I've got a quick question for you about the demonstrative. Doesn't the fact that the jury requested the demonstrative and was denied the opportunity to see it again undermine your reliance on the fact of how crucial that was? I think that the biggest problem was that they had never provided that damage computation to Mr. Franco beforehand to allow him to analyze it, to allow him to challenge it with any type of counter evidence. Seeing that for the very first time immediately before closing argument, he had never received any computation of damages, no formula or no way that they would be calculating their damages until that time. Thank you. Help me if you could. I just have one further question if I might. The demonstrative itself obviously was important enough for the jury to want to ask for it to go in there. Was it anything more than a summary of the testimony of Franco? It was specific figures and a formula applied to it. Right, but what I'm asking is didn't the numbers come directly from Mr. Franco's testimony? The numbers that were plugged into that computation did come from Mr. Franco's testimony. The formula itself did not come from Mr. Franco's testimony. By the formula you mean multiplying it by 2 or 5 or 10? Multiplying it by the operating margin of vision, which they had never asked for until trial, and then the multiplication of the total compensation that Mr. Franco received. Thank you. Good morning, Your Honors. May it please the Court. My name is Kristen Norris. I'm here with Brandon Breslow. We're of Kynes, Markman, and Fellman, and we represent the Alpine entities. The district court did not abuse its discretion when it denied Mr. Franco's motion for new trial or judgment in his favor. As the district court ruled, the motion was both facially insufficient and properly denied on the merits. The two highly procedural discretionary rulings that he challenged in the motion were, in fact, reasonable ones that the district court was forced to make because Mr. Franco created a dilemma for it. And as the jury's damages award is supported by the law and the evidence, we would seek affirmance. I want to start with the damages argument, as my opposing counsel did. The damages that the jury found are well supported by the evidence. The case law is clear that particularly in dealing with misappropriation of trade secrets and unjust enrichment cases, the damages are flexible, they're determined on a case-by-case basis, and they need not be calculated by the jury with mathematical certainty. It's enough if they can be inferred or approximated on a modicum of evidence. I think what's missed here in Mr. Franco's argument is that they can be measured by the value of the benefit conferred. This is what the district court really focused on when it denied the judgment as a matter of law in the new trial motion. The value that was conferred by the trade secrets that Mr. Franco misappropriated was the book of business that he then took with him. First, he tried to do it to open his own business and use those clients for his own unjust enrichment. Then he ended up using it to get a contract with Vision in which he could benefit from that. And so it was perfectly permissible for the jury to decide that the money that Vision received from the Alpine entities was a measure of the value of the benefit conferred by the misappropriation of the trade secrets. Mr. Franco could have kept that for himself with his own broker-dealer. He decided to barter with it to come up with a position with Vision. But it's a proper measure of damages. And as we point out in the brief, there were other ways the jury could get to this number. One was the value of Mr. Franco's compensation that he testified to at trial. In fact, the Stahlcup email showed that he got his job at Vision in part by impressing Vision by bringing in the biggest Alpine clients. So there was a reason for the jury to infer that his compensation at Vision in those first six months was a result of his misappropriation and then to carry that out. Mr. Franco never actually offered to the jury that they shouldn't award any of these numbers, that they should reduce it to the amount that he actually pocketed, which I think also shows that there was no problem with this damages award. And then finally, there was other evidence about the amount that he took not only these three top clients, but ten other clients, and there was figures about what those clients had generated at Alpine. There were ways for the jury to mix and match this evidence. They did ask for the calculation. They didn't have it. Even if all of that is true, why wouldn't your client need it to have disclosed that far earlier in the case than it did? Sure, and so if you look back, what Alpine disclosed in the first moment that it disclosed about its damages was in the joint pretrial statement that was over a year before trial. And at that time, it knew the testimony about Vision earning $100,000 a month from Alpine clients. And so in the pretrial statement, Alpine put very plainly, we are going to prove at trial our damages based on unjust enrichment. Part of that will be through this information. But we don't have the other information. So Alpine disclosed what it could at that point in time. And then the rest of the calculation, the margins, what the Vision contract showed as to Mr. Frankel actually receiving from Alpine clients, all of that, that just came out at trial. And so the judge did find that it was, I mean, she didn't use the word substantially justified, but she looked at the course in the history of events and decided that this limited testimony, she didn't allow other evidence, lost profits evidence or any other kind of calculation. But this evidence was admissible and could be used for a calculation. Not only that, we've cited the cases. This was evidence in Mr. Frankel's possession. Once unjust enrichment was made part of this lawsuit, the district judge allowed it in and it figured it prominently in the case. Fife's testimony was most material and relevant to the unjust enrichment, right? It really went to the heart of much of the unjust enrichment claim. And the district court kept him out. His argument is he just didn't get a fair shake. Once unjust enrichment came in, Fife should have been permitted to testify in the lawsuit because there was a proffer and the proffer went bullseye to some of the things that were most material to the resolution. Why wasn't it an abuse to keep him out? It wasn't an abuse because the judge wasn't just looking at whether or not Fife was an important witness. The district court judge was also looking at the prejudice to Alpine and the history of events and if there was a reason why Mr. Frankel hadn't done this earlier. And the Fife testimony was specifically alluded to in the pretrial statement that Mr. Fife's entities were bringing $100,000 in business to Vision. That was in the pretrial statement over a year before trial. So what the district court actually considered, and Judge Marcus, you've pointed to some of this, Mr. Fife's not on a Rule 26 disclosure. He's not on a supplement. He's put on the May call witness list, after which Alpine says, can you please tell us who your real call witness list is and we'll allow you to depose any undisclosed witnesses from us and you let us do that. He declined. Not only declined, his attorney said at trial, why would I do that? Well, you do it to alleviate any prejudice. And Mr. Frankel declined to do that. But I think the most critical thing is to look at this in the context of where this actually came up during the trial. Even if you can say he didn't understand that Fife was an important witness when he had the pretrial disclosures, on the weekend before trial they have another argument about the damages and the judge says I'm going to allow this level of damages. They have another argument about it the first day of trial. On the second day of trial, all this evidence comes in. Second day of trial, Mr. Frankel's questioned on all of this. And then no request about Fife on the third day of trial. No request about Fife on the fourth day until afternoon. That was the day that the judge had planned to end all testimony. And Mr. Frankel came in in the afternoon. Having said throughout the trial, I only have myself as a witness, he comes in on that fourth day and says I need to call this witness tomorrow. And the judge's first reaction was you want to call a witness the day after we're supposed to conclude the evidence? The judge stayed that night until 6.15 doing jury instructions and then was going back to chambers to continue to work on those. And she had a schedule for the trial. And there's simply no explanation for waiting between day two and day four to decide that this is now the most critical witness in your case. So if he had asked for permission to put Fife on the stand after the opening and on day two, it would have been an abuse of discretion if the district court said no then? I don't think it would have been an abuse of discretion then because of the pre-trial disclosure, because of the prior . . . there were numerous prior discussions about this. The pre-trial disclosure was clear that this was going to depend on the Fife entities and then the motions and limine hearings, all those things leading up. This judge had a number of hearings. And what the case law says is when the judge properly considers all the circumstances, finds a Rule 26 violation, is faced with a witness late in the trial that wasn't clear what's going to be called, then there is no abuse of discretion. Of course, Mr. Frankel has his own Rule 26 violation that he's claiming, right? And I think the argument is that he didn't know at the Rule 26 stage that Mr. Fife's testimony would be relevant because of your client's failure to disclose this particular damages theory. So do those cancel each other out in some way? I don't think so. A couple of reasons sort of buried deep in this record. Number one, Mr. Frankel did say in his answers to interrogatories that he was talking with Mr. Fife, which was within two weeks of his initial disclosures. So he knew he was talking to an Alpine client back then at the very beginning of the case. So I think that would allow the judge to decide that maybe he did know even earlier that Mr. Fife was available as a witness for him. And then I think after you get to the pretrial statement, there's a definite connection there. So I think the fact that he's then noted in the interrogatory or he's talked about on the last day of discovery in Mr. Frankel's deposition really doesn't give Alpine what it needs to know about, this is going to be somebody who I'm going to rely on in my defense. You need to go forward with deposing this person. And then again, denying that opportunity with a late disclosure. So I think the judge was well within her discretion in these rulings. What about the demonstrative aid? It sure looks like a damage calculation. It is a damage calculation. Right, and the court certainly barred him from putting on a damage calculation. In a formal sense, she couldn't put on like an expert witness to say, here's my calculus of damages. Yes, so she allowed the damages calculation because it was based on the evidence that was presented for the first time at trial. She limited Alpine to only that. And then I think she also concluded that there was simply no prejudice to Mr. Frankel who had that information all along. I mean, part of the damages issue in this case, it really calls to mind the rule that the person who engages in wrongdoing that then makes it difficult to decide what the damages are bears the risk of that uncertainty. And the reality about this case is that Mr. Frankel, and in his testimony, acknowledged he could have calculated with precise precision what the damages actually were because he received a monthly report that showed him all of what Alpine's customers paid to Vision, that he could take out the expenses, and then of course he could apply his formula in the unredacted independent contract agreement to determine precisely. He could have presented that testimony to the jury if he wanted to. And the fact that he didn't suggests that what the jury had to work with, his 2019, what he could remember testimony, is actually a fairly modest amount. Briefly on the cross appeal, as explained in the brief, the judge who presided over the trial in the long course of proceedings unfortunately recused herself shortly afterwards and left to a successor judge the unfortunate task of having to review everything for the post-trial motions, including Alpine's request for a permanent injunction, and really made three clear errors. The first having to do with the trade blotter, misunderstanding that the trade blotter was a specific compilation of information, and that this one snippet of testimony . . . Does that affect the issue of whether or not the district court erred in its ruling on preliminary permanent injunction? It doesn't. It's a separate piece. And all three are, I think, important and need to be shown. The preliminary injunction, basically, this harkens back to a lot of what we've talked about in the initial appeal, and that is that Alpine didn't have the information to get a preliminary injunction. It's an extraordinary remedy, and there was a cat-and-mouse game. Alpine acted immediately when it heard about the misappropriation and thought that Mr. Frankel was going around and hawking its book of business, sent him a demand letter and said, please return any confidential information. And his response was, you tell me what I have. And so there was this cat-and-mouse game throughout trial, up until and through trial, trying to get the information Alpine would have needed to prove the elements of a temporary or a permanent injunction. And then third, the district court effectively found that it was bound by the jury's verdict to say that Alpine had actually suffered no harm, could not prove an inadequate remedy at law. But in fact, that seems entirely inconsistent with what the jury found, particularly when you consider the evidence on which it was based, that these were Alpine clients now doing business with a competitor that had not done that business before. The jury's verdict is easily explained as deciding that they simply couldn't decide what the actual damages were. They were told they couldn't duplicate damages between actual and unjust enrichment. And so the court, I think otherwise, the case law is pretty consistent that this is a type of loss that would be appropriate for a permanent injunction. And so for these reasons, we'd ask the court to affirm on the main appeal and then reverse the denial of a permanent injunction. Mr. Hull, you have two minutes for rebuttal. Thank you. I'll start with the cross appeal. The jury specifically awarded no damage and was allowed to but did not award nominal damages at all. So the jury finding of no damage was clearly not something that was done to avoid double counting. And as I mentioned earlier, there was no proof in the record at all that Alpine lost any business or any clients. The only proof showed that certain clients started to do some business with Vision. There was no proof, no evidence whatsoever that they stopped doing any of that business with Alpine. And so the jury's finding of unjust enrichment was not even arguably something that it had done in order to avoid a duplication or a double award that had been dealt with in denying actual damages. There was nothing given to the jury to value the book of business to Mr. Frankel. That was never even argued to the jury. What the jury awarded was Vision's profit, and that was not unjust enrichment to Frankel. I want to focus on the pretrial statement because in the pretrial statement, that was the first place where Alpine had disclosed that it might be looking for an award of damage consisting of Fife's payments. And in that very same pretrial statement, Mr. Frankel listed Mr. Fife as a witness. There's no disconnect there. The same statement where they said they were going to look for damages related to Mr. Fife, Mr. Fife is disclosed as a witness. Why not try to call Mr. Fife after day two rather than after day four? How is that excusable? That was a decision that was made based on the way that the evidence came in. And after hearing the evidence on day four, and we mentioned this in our brief, pointed to certain evidence that had come in on day four that made it very clear that Mr. Fife needed to be called. But wasn't it clear from the opening bell, at least from the opening statement, that Fife had to be called? By that point, you knew exactly what their theory of the case was and so on. Their theory of the case, as I mentioned earlier, had morphed throughout the entire trial. Right, but by the end of the road when opening statements were made, it was pretty clear, wasn't it? See, the reason I asked the question, and I'm sure that Judge Grant asked for the same reason, is that if you had said at the start of the trial, I need Fife, the court might well have said, okay, we'll send the jury home, depose them in the morning, and then come back. And they wouldn't have sustained any prejudice not knowing what he had to say. But by waiting until the very, very end of the case, you made it substantially more difficult. Maybe the court should have allowed it in any way. But your burden is to show that it was an abuse of discretion not to. And I do think it was an abuse of discretion, even though he was only asked on day four, based on the way the evidence had come in, that that was an abuse of discretion to keep him out, especially considering how critical his testimony was and would have been in this case. Thank you. We're going to take a ten-minute recess before the next case.